UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PNC BANK, NATIONAL ASSOCIATION, | ) |
| Plaintiff, | ) Case No. 18-cv-4167 |
| | ) Judge Sharon Johnson Coleman |
| v. | ) |
| SAMUEL G. BOYTOR, CAROL A. BOYTOR, BMO HARRIS BANK, N.A., successor to Amcore Bank, N.A., CITIBANK (South Dakota) N.A., | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff PNC Bank filed this mortgage foreclosure and breach of contract lawsuit against defendants Samuel G. Boytor, Carol A. Boytor, BMO Harris Bank, and CitiBank (South Dakota). Before the Court is PNC Bank's motion for summary judgment under Federal Rule of Civil Procedure 56(a). For the reasons explained below, the Court denies PNC Bank's motion.

**Background**

On April 20, 2006, the Boytors executed a Promissory Note in favor of Mid America Bank, PNC Bank's predecessor, in the principal amount of $200,000.00 at 0% interest ("Note 1"). Note 1 did not require payments and there was no disbursement of funds. Although the maturity date for Note 1 was originally April 3, 2009, Note 1 was modified pursuant to a Note Modification Agreement ("Modification") whereby the maturity date was extended to April 3, 2011. The parties did not execute a mortgage to secure Note 1.

On April 24, 2006, the Boytors executed a second Promissory Note in the principal amount of $203,000.00, also at 0% interest ("Note 2"). The maturity date on Note 2 was April 3, 2009. To secure the indebtedness of Note 2, the Boytors executed a Mortgage ("Mortgage") in favor of Mid

America Bank pledging the real property at 822 Tipperary Street, Gilberts, Illinois ("Property"). The Mortgage was recorded with the Kane County Recorder of Deeds Office on May 3, 2006.

One of the bankers who managed the Boytors' loans, Jacalyn Brennan, testified at her deposition that Note 1 and Note 2 were related to a different, larger loan. Evidence in the record reveals that the other loan was for $600,000 and related to commercial real estate the parties call the Rippburger Property. Notes 1 and 2 were bullet or back-up notes that did not bear interest or require payments, but instead served as liens on the Rippburger Property.

PNC Bank asserts that the Boytors defaulted under the terms and provisions of Note 1 by failing to pay all money due and owing by the maturity date of April 3, 2011. Likewise, PNC Bank contends that the Boytors defaulted under the terms and provisions of Note 2 by failing to pay all money due and owing by the maturity date of April 3, 2009. PNC Bank further maintains that pursuant to their default under Note 2, the Boytors defaulted under the Mortgage.

The Boytors, on the other hand, present evidence, including Brennan's testimony, that PNC Bank's predecessor moved Note 2 to dead status and forgave the $203,000.00 loan on April 3, 2009. Specifically, an internal "managed assets status change and 1099 reporting form" signed by Brennan stated:

> MAF [loan system] had done a workout by doing a forbearance agreement. The agreement was to take monies owed and put these funds in a zero percent interest balloon note taking a lien on their home. A note and mortgage was completed 4/20/2006. The note was signed and the mortgage was not because it was determined that the note and mortgage should have been for $203,000. A new note and mortgage was completed on 4/24/2006. The forbearance agreement was never changed to refle[ct] the changed note amount. The note was signed and the mortgage was recorded. In error, both notes got booked. Because the forbearance agreement was never changed, we are going to keep the $200,000 note and leave the $203,000 note to Dead status.

(R. 66-1, Brennan Dep. Ex. #7.) There is also evidence in the record, namely, Samuel Boytor's affidavit, that the parties entered into a forbearance agreement conditioning the payment of the $200,000.00 Note on the sale of the Rippburger Property.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986). When determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Id.* at 255; *Palmer v. Franz*, 928 F.3d 560, 563 (7th Cir. 2019). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted). At summary judgment, courts do not assess the credibility of witnesses or balance the weight of evidence. *Driveline Sys., LLC v. Arctic Cat, Inc.*, 936 F.3d 576, 579 (7th Cir. 2019).

**Discussion**

To establish a breach of contract claim under Illinois law, PNC must show (1) the existence of a valid and enforceable contract, (2) PNC's substantial performance, (3) the Boytor's breach, and (4) resulting damages. *Sevugan v. Direct Energy Servs.*, LLC, 931 F.3d 610, 614 (7th Cir. 2019). Here, PNC Bank argues that there is no genuine dispute as to any material fact that the Boytors breached Notes 1 and 2 by failing to pay the money due and owing by the respective maturity dates.

Viewing the evidence and reasonable inferences in the Boytors' favor, they have set forth sufficient evidence raising triable issues of fact as to whether Note 2 is a valid and enforceable contract, as well as whether they breached the Notes. First, there is evidence in the record that PNC Bank's predecessor forgave the $203,000.00 loan on April 3, 2009. Moreover, Samuel Boytors avers that along with the Promissory Notes and Mortgage, the parties executed a forbearance agreement,

which included language that the $200,000.00 Note was not collectible until the Rippburger Property was sold. Although PNC Bank argues there is no such forbearance agreement, the existence of this agreement in relation to the $200,000.00 Note is mentioned in bank documents in the record, including a PNC Bank document discussed at Brennan's deposition which stated that the $200,000.00 Note was part of a forbearance agreement. (R. 66-1, Brennan Dep. Ex. 8.)

It is not entirely clear why PNC Bank did not fully explain the Boytor's loan history in more detail in their opening brief. By doing so, PNC Bank had to raise issues and arguments in its reply brief for the first time, which is not a good practice in this Circuit. *See Wonsey v. City of Chicago,* 940 F.3d 394, 398 (7th Cir. 2019) ("arguments raised for the first time in a reply brief are waived"). The Court nonetheless considered PNC Bank's arguments made in reply, many of which went to issues of credibility and the weight of the evidence. Despite PNC Bank's arguments made in its legal memoranda, the Court concludes that there are genuine disputes as to the material facts concerning whether Note 2 is a valid and enforceable contract and whether the Boytors breached the Notes or defaulted on the Mortgage.

**Conclusion**

Based on the foregoing, the Court denies PNC Bank's summary judgment motion [54]. The Court denies PNC Bank's motions for attorney's fees and default judgment without prejudice [53, 58].

IT IS SO ORDERED.

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge

DATED: 1/16/2020

4