UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PNC BANK, NATIONAL ASSOCIATION, <br><br> Plaintiff, <br><br> v. <br><br> SAMUEL G. BOYTOR and CAROL A. BOYTOR, <br><br> Defendants. | Case No. 18 C 4167 <br><br> Magistrate Judge Sunil R. Harjani |

**MEMORANDUM OPINION AND ORDER**

This diversity action, in part, sought to foreclose a note and mortgage held by Plaintiff PNC Bank, National Association ("PNC Bank") relating to a single family residence in Gilberts, Illinois. PNC Bank now moves to confirm the court-ordered sale, for a deficiency judgment against Defendants, and for an eviction order. For the reasons stated below, the Court grants in part and defers ruling in part on PNC Bank's motion [167].

**BACKGROUND**

The Court presumes familiarity with the background of this case, which was described in detail in the Court's September 10, 2021 opinion. *See PNC Bank, National Association v. Boytor*, 2021 WL 4133540 (N.D. Ill. Sept. 10, 2021). To summarize, in June 2018, PNC Bank filed a complaint seeking to foreclose a mortgage on Defendants' residential property located at 822 Tipperary Street in Gilberts, Illinois which secured a $203,000 note (Count I) and a money judgment for breach of a $200,000 promissory note (Count II). The Court held a two-day bench trial on both counts beginning May 25, 2021. On September 10, 2021, the Court issued an opinion setting forth its findings of fact and conclusions of law. Doc. 150. In its findings of fact and

conclusions of law, the Court found in favor of PNC Bank and against Defendants on both counts of the complaint. *Id.* As a result, the Court entered a Judgment of Foreclosure and Sale on the $203,000 mortgage on Count I and a money judgment in the amount of $354,375, which included pre-judgment interest, on Count II. Docs. 152, 153.

Pursuant to the Judgment of Foreclosure and Sale, a Special Commissioner's Sale was held on September 13, 2022. In the Certificate of Sale, Receipt of Sale, and Report of Sale and Distribution, the Special Commissioner indicated that PNC was the high bidder at the sale. Docs. 168-170. PNC Bank now moves for an order approving the sale. PNC Bank additionally seeks: (1) entry of an order granting an in personam deficiency judgment in the amount of $159,682.45 against the Defendants Samuel G. Boytor and Carol A. Boytor and in favor of PNC Bank and (2) entry of an eviction order against Samuel G. Boytor and Carol A. Boytor and in favor the PNC Bank's Assignee, Land Holding, LLC.[1]

## DISCUSSION

Section 15-1508(b) of the Illinois Mortgage Foreclosure Law ("IMFL") governs the approval of court-ordered foreclosure sales. *HSBC Bank USA, N.A. v. Townsend*, 793 F.3d 771, 775 (7th Cir. 2015) ("Illinois law specifies the various steps that must be taken [in mortgage foreclosure cases]; it is the governing law in this diversity action."). Section 15-1508(a) of the IMFL requires that a Report of Sale be submitted to the Court for review and approval. 735 ILCS 5/15-1508(a). "Pursuant to the IMFL, a court will ordinarily confirm a judicial sale unless it finds that '(i) a notice required in accordance with subsection (c) of Section 15-507 was not given, (ii) the terms of the sale were unconscionable, (iii) the sale was conducted fraudulently, or (iv) justice

---

[1] PNC Bank executed an Assignment of Certificate of Sale on September 29, 2022. Doc.167 at 3.

was otherwise not done . . . .'" *Romspen Mortgage Limited Partnership v. BGC Holdings LLC – Arlington Place One*, 20 F.4th 359, 366 n.8 (7th Cir. 2021) (quoting 735 ILCS 5/15-1508(b)).

PNC Bank has submitted the Selling Officer's Report of Sale and Distribution. Doc. 170. Defendants contend that the Court should deny the motion for an order confirming the sale, raising three objections: (1) PNC Bank's motion did not attach a proposed order of confirmation; (2) the motion does not address the first mortgage recorded against the property; and (3) the sale price is so low and contrary to the established value of the property that it is tantamount to fraud. Defendants also argue that the Court should exercise its discretion and not award any deficiency judgment. The Court considers each of these arguments in turn.

Defendants first object they were entitled to review the draft order PNC Bank wanted the Court to enter so they can raise any valid objections. The proposed order of confirmation was subsequently submitted by PNC Bank, and the Court allowed Defendants to file a supplement brief addressing any issues they had with the proposed order. Docs. 174 at 8-10, 175. Defendants filed no objection to the language of the draft order.

In their second objection, Defendants assert that PNC Bank's motion fails to mention the senior mortgage recorded against the subject property. According to Defendants, PNC Bank appears to seek clean title to the property, but it cannot obtain clean title to the property because PNC Bank did not include the first mortgagee as a party to this case. In response, PNC Bank confirms that the property carries a mortgage on it senior to the foreclosed mortgage, and the senior mortgage is held by PNC Bank. Established case law holds that "[a] suit to foreclose a junior mortgage can cut off only rights or claims of interest *subsequent* to the interest asserted." *Heritage Federal Credit Union v. Giampa*, 622 N.E.2d 48, 49 (Ill. App. 1993) (emphasis in original). The purchaser at a foreclosure sale "takes title to the property subject to all prior liens and

encumbrances." *Id*. Consequently, the senior mortgage on the Boytor residence is not affected by these proceedings to foreclose a junior mortgage held on the property, *id*. at 50, and the existence of a senior mortgage upon the property does not provide a valid basis for denying confirmation of the sale.

Defendants' third objection is that the sale price of the property is "so low" that it is "tantamount to fraud." Doc. 172 at 2. The Court construes Defendants' fraud argument as a challenge to the sale price as unconscionable under Section 15-1508(b)(ii) as there is no assertion or evidence of "fraud surrounding the sale itself," which is a separate basis for rejecting a sale under Section 15-1508(b)(iii). *Bank of America, N.A. v. Givens*, 2019 WL 2257126, at *4 (Ill. App. 2019); *HSBC Bank USA, National Association v. Williams*, 2015 WL 1509779, at *6 (N.D. Ill. March 30, 2015).

The sale price of property at a foreclosure sale is one of the "terms of sale" as that phrase is used in Section 15-508(b)(ii). *World Sav. and Loan Ass'n. v. Amerus Bank,* 740 N.E.2d 466, 474 (Ill. App. 2000). "[I]n the absence of mistake, fraud or violation of duty by the office conducting the sale, mere inadequacy of price is not sufficient reason to disturb a judicial sale." *Id*; *Lyons Sav. and Loan Ass'n v. Gash Associates*, 545 N.E.2d 412, 416 (Ill. App. 1989) (quoting *Illini Federal Sav. and Loan Ass'n v. Doering*, 516 N.E.2d 609, 611 (Ill. App. 1987)) ("inadequacy of price alone is not sufficient cause for setting aside a judicial sale"). This is based, in part, on the "well-established acknowledgment that property does not bring its full value at forced sales, and that price depends on many circumstances from which the debtor must expect to suffer a loss." *World Sav. & Loan Ass'n,* 740 N.E.2d at 474; *Illini Federal Sav. and Loan Ass'n*, 516 N.E.2d at 611.

The record indicates that PNC Bank's bid amount was $320,800. Defendants say the fair market value of the property is at least $475,000 based on the real estate taxes for the property

4

which list a "fair cash value" of $475,884. Doc. 172 at 15. Thus, PNC Bank sold the property for approximately 33% below the fair market value of the property. PNC Bank's response is two-fold. First, in this case, the property carries a mortgage on it senior to the foreclosed mortgage ("Senior Mortgage"), and the payoff on the Senior Mortgage as of October 19, 2022 was $65,253.34 (the "Payoff"). Doc. 174 at 12-15. PNC Bank's bid amount of $320,800 ("Bid") takes into account the value of the property subject to the Payoff on the Senior Mortgage. According to PNC Bank, the actual bid amount totals $386,053.34 (Bid + Payoff = "Actual Bid Amount"), which is more than 81% of the $475,000 fair market value asserted by Defendants. Second, even assuming the property would be appraised at the value assigned to it by Defendants, merely comparing the bid to an appraisal does not establish an unconscionably low price.

Before turning to its analysis, the Court notes that Defendants did not request an evidentiary hearing to determine whether the sale should be confirmed based on an allegation that the sale price is unconscionable, and the Court finds that an evidentiary hearing is not warranted even if Defendants had requested one. *See* 735 ILCS 5/15/-1508(b); *U.S. Bank N.A. v. O'Malley*, 2022 WL 130922, at *3 (Ill. App. Jan. 14, 2022) ("section 15-1508(b) imposes no obligation on the circuit court to hold an evidentiary hearing whenever a party requests one after a motion to confirm."). "To warrant an evidentiary hearing on the issue of unconscionability of the sale price, the debtor must present a current appraisal or other current indicia of value which is so measurably different than the sale price as to be unconscionable." *T2 Expressway, LLC v. Tollway, L.L.C.*, 197 N.E.3d 263, 269 (Ill. App. 2021); *Resolution Tr. Corp. v. Holtzman*, 618 N.E.2d. 418, 425-26 (Ill. App. Ct. 1993). Defendants have identified no evidence that they could present at an evidentiary hearing that could change the outcome. *Romspen Mortgage Limited Partnership*, 20 F.4th at 374. In evaluating whether the terms of the sale were unconscionable, the Court assumes the pertinent

comparison figure is the $475,000 valuation asserted by Defendants but finds the bid amount was not unconscionable.

The Court agrees with both of PNC Bank's contentions and concludes that the sale price was not unconscionable. Sale price as a percentage of fair market value is an appropriate method for evaluating unconscionability. *T2 Expressway*, 197 N.E.3d at 269. "There is no established percentage of fair market value below which a sale price is considered unconscionable" *Id*. However, "[r]ecent case law suggests that a sale price below 50% of fair market value is a reasonable threshold for unconscionability." *Id*. Moreover, it is presumed that a purchaser at a foreclosure sale "regulated his bid with refence to the prior mortgage and bid only what he considered the premises worth subject to the prior lien." *Gregory v. Suburban Realty Co.*, 127 N.E. 119, 122 (Ill. S.Ct. 1920).

Applying this last principle here, the Payoff on the Senior Mortgage reasonably influenced PNC Bank's bid at the sale and should be considered in evaluating the adequacy of the sale price. When compared to the $475,000 fair market value asserted by Defendants, the Actual Bid Amount of $386,053.34 is 81% of the fair market value. However, even the bid amount of $320,800 represents 67.5% of Defendants' fair market value. This disparity of a sales price between 67.5% and 81% of the asserted fair market value is significantly above the 50% of fair market value threshold and within the range that Illinois court have accepted as sufficient to confirm a judicial sale. *O'Malley*, 2022 WL 130922, at *4-5 (property that "sold for, at worst, 76% of its assessed value" indicates that the sale price was not unconscionable); *T2 Expressway, LLC*, 197 N.E.3d at 269 (sale price representing between 54% and 65% of defendants' suggested fair market value was not unconscionably low); *Bank of America, N.A. v. Kusek*, 2017 WL 4411010, at *9 (Ill. App. Sept. 29, 2017) (purchase price that was 69.5% of the appraised value was not unconscionable);

6

*Lyons Sav. and Loan Ass'n*, 545 N.E.2d at 416 (sale price which was 69% to 80% of Defendants' appraisals was not "grossly inadequate"). Defendants have not cited a case where a court has found a sale price above 67% of the asserted fair market value was unconscionable.

Further, even if the sale price could be considered inadequate, that by itself would not support denying confirmation of the judicial sale. *World Sav. & Loan Ass'n,* 740 N.E.2d at 474. Sale price alone is insufficient to deny a motion to confirm the sale "without some other irregularity" involving the sale process, such as mistake, fraud, or a violation of duty by the officer conducting the sale. *T2 Expressway, LLC*, 197 N.E.3d at 269; *JP Morgan Chase Bank v. Fankhauser*, 890 N.E.2d 592, 602 (Ill. App. 2008) ("Illinois courts have generally held that mere inadequacy of price is not sufficient to disturb a judicial sale unless there were some other irregularities."). Absent evidence of fraud or some other irregularity in the foreclosure proceeding, the price at which the property sold is "the conclusive measure of its value." *RCB Equities #3, LLC v. Jakubow*, 2021 WL 886414, at *9 (Ill. App. March 9, 2021). Here, Defendants fail to cite any irregularities or errors relating to the actual sale process. For these reasons, the sale price was not unconscionable and the Court will confirm the sale.

For their final argument, Defendants contend that the Court should exercise its discretion and not award any deficiency judgment in this case. PNC Bank seeks a deficiency judgment in the amount of $159,682.45, which represents the difference between the sale price ($320,800.00) and the debt owed ($480,482.45). "The right in any foreclosure proceedings to proceed against the property and in addition to secure a money judgment for any deficiency, provided the creditor receives only one full satisfaction is clear." *F.D.I.C. v. Meyer*, 781 F.2d 1260, 1265-66 (7th Cir. 1986) (quoting *Emerson v. LaSalle Nat. Bank*, 352 N.E.2d 45, 50 (Ill. App. 1976)). Section 15-508(e) of the IMFL provides:

7

> Deficiency Judgment. In any order confirming a sale pursuant to the judgment of foreclosure, the court shall also enter a personal judgment for deficiency against any party (i) if otherwise authorized and (ii) to the extent requested in the complaint and proven upon presentation of the report of sale in accordance with Section 15-1508. Except as otherwise provided in this Article, a judgment may be entered for any balance of money that may be found due to the plaintiff, over and above the proceeds of the sale or sales, and enforcement may be had for the collection of such balance, the same as when the judgment is solely for the payment of money. Such judgment may be entered, or enforcement had, only in cases where personal service has been had upon the persons personally liable for the mortgage indebtedness, unless they have entered their appearance in the foreclosure action.

735 ILCS 5/15-1508(e). Illinois courts have held that "shall" as used in the first sentence of Section 15-1508(e) "imposes an imperative duty to grant an *in personam* deficiency judgment in favor of a plaintiff under section 15-1508(e) of the IMFL." *Deutsch Bank National Trust Co. v. Diedrick*, 2022 WL 1746793, at *9 (Ill. App. May 31, 2022); *see also U.S. Bank Trust, N.A. v. Atchley*, 45 N.E.3d 286, 288 (Ill. App. 2015) ("A trial court must grant an *in personam* deficiency judgment in favor of a plaintiff under section 15-508(e) of the Foreclosure Law when the requirements set forth in that section are met.").

The Seventh Circuit disagrees, and has held that the IMFL "gives courts discretion over deficiency judgments." *Townsend*, 793 F.3d at 777 (citing 735 ILCS 5/15-1508(b)(2) (a judge's order confirming a sale "*may* also . . . provide for a personal judgment against any party for a deficiency."); 735 ILCS 5/15-1508(f) ("*If* the order confirming the sale includes a deficiency judgment); 735 ILCS 5/15-1508(e) (second sentence stating the "judgment *may be entered* for any balance of money that may be found due to the plaintiff, over and above the proceeds of the sale or sales.")) (emphasis added in all). In *Townsend*, the court gave three examples of circumstances in which a court could use its discretion: (1) a court might confirm a foreclosure sale but decline to enter a deficiency judgment if the auction was not conducted in a commercially reasonable way to maximize the price; (2) "[a] mortgagor might protest that an auction delivering far below the

8

amount specified in the foreclosure judgment was not conducted in the way most likely to attract a high bid" and "if the judge decides that better advertising or other measures would have produced a bid closer to the full amount owned, he might either cut or deny any deficiency judgment"; (3) the amount of a deficiency judgment "might also depend on how much time elapse between the district court's sale order (which qualifies the debt *at that moment*) and the purchaser's payment of the price at the auction" because "[t]he longer the delay, the more prejudgment interest must be added under the terms of the note." *Id*. at 776. An earlier Seventh Circuit case, *Mortgage Electronic Registration Systems, Inc. v. Estrella*, 390 F.3d 522, 525 (7th Cir. 2004), recognized that a "district judge has discretion to deny the lender a deficiency judgment when a price shortfall at an auction results from negligence of the lender or its agent."

The Court follows Seventh Circuit precedent in finding that it has discretion to reduce or deny a deficiency judgment. As explained below, the Court defers ruling on a deficiency judgment pending limited supplemental briefing. The Court notes that the requirements of the statute are met and Defendants raised none of the specific deficiency judgment concerns noted in *Townsend* and *Estrella*. The complaint in this case seek a deficiency judgment against Defendants. *See* Doc. 1, ¶ 21(m) & Wherefore Clause. Additionally, the mortgage and note were attached to the complaint. The note advised that the principal of $203,000 became due on April 3, 2009 and that failure to pay $203,000 by that date constituted an "Event of Default" under the note. Doc. 1-3 at 2. Defendants agreed that "[u]pon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount." *Id*. The mortgage advised Defendants that "[i]f permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section," which included

9

sale of the property. Doc. 1-4 at 10. The Judgment of Foreclosure and Sale advised Defendants that "PNC shall be entitled to a judgment *in personam* against Samuel G. Boytor and Carol A. Boytor" if the sale proceeds are insufficient funds to pay in full the amounts due. Doc. 152 at 7, ¶ 19. The Report of Sale and Distribution indicates a deficiency of $159,682.45. Doc. 170 at 2. Defendants have also filed appearances and defended themselves in the foreclosure action.

Defendants contend that the Court should not award a deficiency in this matter because PNC Bank "seeks to enforce a commercial mortgage against the defendants' abode," the mortgage "arose out of a convoluted commercial loan pertaining to another property," PNC Bank "created and recorded numerous documents that stated that all monies had been paid and that all claims were released," and PNC waited almost a decade after the default date before commencing this action, Doc. 172 at 4. In its written decision, the Court specifically considered the history of $203,000 note and mortgage and Defendants' account of events. *See PNC Bank, N.A. v. Boytor*, 2021 WL 4133540 (N.D. Ill. Sept. 10, 2021). Nonetheless, the Court rejected Defendants' claim that there was a release of the $203,000 mortgage, found Mr. Boytor's testimony on the $203,000 note not credible, and ultimately concluded that PNC Bank had shown that it was more likely than not that Defendants failed to pay $203,000 to PNC Bank by the note's maturity date on April 3, 2009. *Id*. at *14-16.

However, the Court is concerned about the long delay between the note's maturity date on April 3, 2009 and PNC Bank's initiation of this lawsuit in June 2018. A consequence of this delay was the accrual of interest for more than nine years between the note's maturity and the filing of this foreclosure action. Although the record does not show the exact amount of interest attributable to this delay, the interest since April 3, 2009 through September 30, 2021 is $192,976.87. Doc. 152 at 2. Significantly, given PNC Bank's position that the imposition of a deficiency judgment

against Defendants is mandatory, rather than permissive, PNC Bank did not respond to Defendants' delay argument in its reply brief. In light of this concern and because the Court has determined that it has equitable authority to reduce or deny a deficiency judgment, the Court requests supplemental briefing, supported by authority, discussing the limited issue of how the Court should exercise its discretion in this case in response to Defendants' delay argument. The parties' briefing shall also include the exact amount of interest accrued since April 3, 2009 through June 15, 2018. PNC Bank may file supplemental briefing by February 10, 2023, and Defendants may file a response by February 21, 2023.[2]

On last issue requires attention. On September 28, 2021, the Court entered a Judgment of Foreclosure and Sale, finding that Defendants owed PNC Bank $395,976.87 (representing principal and interest) on the $203,000 Note, and order providing for judicial sale of the property if Defendants did not pay before the redemption period expired. Doc. 152. The Foreclosure Judgment also provided that PNC Bank would be entitled to obtain a deficiency judgment against Defendants. *Id*. at 7. On that day, the Court entered a separate final judgment on Counts I and II in favor of PNC Bank and against Defendants pursuant to Federal Rule of Civil Procedure 58 and terminated the case. Docs. 152, 153. However, in researching the issues raised in Defendants' Objections to the Motion to Confirm, the Court has become concerned about whether it improperly issued a final judgment given PNC Bank's foreclosure claim in Count I. In *Townsend*, 793 F.3d 771 (7th Cir. 2015), the Seventh Circuit "held that in mortgage foreclosures in federal courts in Illinois, there is no final appealable judgment until the district court has not only foreclosed the

---

[2] The Court notes that under some circumstances, mortgagees (including PNC Bank) have agreed not to pursue deficiency judgments against mortgagors. *See e.g., Devon v. Spirrison*, 2020 WL 7319402, at *2 (Ill. App. Dec. 11, 2020); *Morse v. Donati*, 136 N.E.3d 1043, 1047 (Ill. App. 2019); *Mass Realty LLC v. Five Mile Capital SPE A LLC*, 2014 WL 5587534, at *2 (Ill. App. Nov. 3, 2014); *Grundy County Nat. Bank v. Olsen*, 534 N.E.2d 196, 200 (Ill. App. 1989).

11

mortgage but also ordered judicial sale of the property and later confirmed the results of the sale and ordered turnover of the property." *Deutsche Bank National Trust Co. v. Cornish*, 759 F. App'x 503, 504 (7th Cir. 2019). In sum, a judgment of foreclosure does not actually "dispose of all issues between the parties and it does not terminate the litigation." *Townsend*, 793 F.3d at 776. Thus, at the time it was entered on September 28, 2021, the judgment of foreclosure was not final and appealable and did not conclude the foreclosure suit.

Accordingly, it appears appropriate to vacate the September 28, 2021 Final Judgment [153] as improvidently issued and direct that a new final judgment would thereafter be entered when the deficiency judgment issue has been determined. If the parties agree with this approach, the Court invites them to file a joint Rule 60(b) motion for relief from a final judgment by February 10, 2023. *See Van Cannon v. United States*, 890 F.3d 656, 661 (7th Cir. 2018) (noting a circuit split on whether district judges may grant Rule 60(b) relief sua sponte and Seventh Circuit precedent holding that a district court may vacate a judgment on its own motion but suggesting "[t]here may be good reason to reconsider" that conclusion in light of the text of Rule 60(b) providing that a court may vacate a judgment "[o]n motion and just terms"). If either side disagrees with this approach, they shall file an objection within their supplemental briefs regarding the deficiency judgment request.

## **CONCLUSION**

For the reasons stated above, Plaintiff's Motion for Order Approving Report of Sale and Distribution, Confirming Sale, and Eviction Order [167] is granted in part and deferred in part pending the parties' supplemental briefing.

**SO ORDERED.**

Dated: January 31, 2023

_____
Sunil R. Harjani
United States Magistrate Judge